IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.  09-cr-00438-DBE

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MOHAMMED WALI ZAZI,

        Defendant.

_____

**REPLY TO GOVERNMENT'S RESPONSE [#35]**
**RELATING TO DISCLOSURE OF GRAND JURY TRANSCRIPTS**
_____

Defendant, by and through counsel, Assistant Federal Public Defender Edward R. Harris, replies to the government's response (Docket # 35), relating to Mr. Zazi's request for disclosure of the grand jury transcript which led to his Indictment, as follows:

## I.      Introduction

The government's unwillingness to disclose the grand jury transcript in this case is the exception not the norm in this District.  In fact, in this District, motions like Mr. Zazi's request for grand jury transcripts are routinely filed and granted.

This case presents a particularized need for disclosure of grand jury testimony.  That need is driven in large part by the cloak of secrecy surrounding Rule 16 discovery in the case.  CIPA, FISA, and a veritable alphabet soup of security and classified document procedures have slowed the normal flow of discovery to a trickle.  Yet, not only has the government yet to provide basic Rule 16 disclosure even of Mr. Zazi's own statements in allegedly pivotal

telephone calls, it now opposes release of grand jury transcripts. This is the Orwellian backdrop against which Mr. Zazi's Motion must be decided.

## II.    Argument

### 1.    This Court has Substantial Discretion to Order Grand Jury Disclosure as Justice Warrants

The government analysis of the grand jury disclosure issue is partly correct and partly flawed. It is correct -- disclosure of grand jury transcripts requires a showing of particularized need. However, it wrongly concludes that there is no such need here.

The government assumes that grand jury secrecy trumps all. Yet, in countless cases, in our District Court judges routinely grant requests for grand jury disclosure. Appellate courts have not hesitated to affirm such disclosure. Indeed, the Supreme Court has made clear that the Rule 6(e) standard for establishing a right to disclosure not an excessive one, but rather "is a highly flexible one, adaptable to different circumstances." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 445 (1983). Especially in a criminal case, "the Court has confirmed the trial court's power under Rule 6(e) [F.R.Cr.P.] to direct disclosure of grand jury testimony 'preliminarily to' or in connection with a judicial proceeding." *Dennis v. United States*, 384 U.S. 855, 870 (1966).

The cases upon which the government relies highlight that this Court "is infused with substantial discretion" regarding grand jury disclosure. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 223 (1979); *see also In re Grand Jury Proceedings GL-76-4 & GJ-75-3*, 800 F.2d 1293, 1299 (4th Cir. 1986) (disclosure of Grand Jury transcripts is a request

that allows for "the flexibility and balance that is inherent in discretionary choice). Nor do those cases negate the need for disclosure here. In fact, key cases cited by the government are distinguishable, inapposite, or actually support disclosure.

The government cites *In Re Special Grand Jury* for the position that prior testimony will be less affected by memory loss, attributing to Mr. Zazi this as an argument in support of disclosure. However, *In Re Special Grand Jury 89-2*, 143 F.3d 565 (10th Cir. 1998) is readily distinguishable from Mr. Zazi's case. First, memory loss is not really what Mr. Zazi has argued, and is certainly not his only argument. Second, because that case is a *civil* case, the "magnitude of injustice," *see Douglas Oil*, 441 U.S. at 222, that non-disclosure would result in is significantly mitigated when compared to Mr. Zazi's case; the monetary dispute at issue in *In Re Special Grand Jury* stands in stark contrast to this case, where Mr. Zazi faces significant prison time if convicted. Third, *In Re Special Grand Jury,* unlike Mr. Zazi's case, involved an attempt by the party seeking disclosure to affirmatively use (i.e. to introduce as evidence) the grand jury testimony.

Most critically, however, *In Re Special Grand Jury* fails the particularized need test precisely for the reasons that the need here is particularized. The *In Re Special Grand Jury* Court was concerned with the very narrow issue presented to it – a claim that testimony in the grand jury was inherently more credible in a *civil* case because it was "fresh" testimony. As the Court aptly noted: "[S]ignificant differences between procedural requirements in civil and criminal cases make it unsafe to draw any analogy between the two in disclosure cases." *Id*. (*quoting Allis-Chamers Mfg. Co. v. City of Ft. Pierce*, 323 F.2d 233, 237 (5th Cir. 1963)).

3

This makes Mr. Zazi's point exactly:  **Criminal Cases Are Different than Civil Cases**.  *See In re Special Grand Jury*, 143 F.3d at 770 n.6.

This civil/criminal distinction is highlighted by the very process involved in assessing particularized need.  What the courts are really doing in deciding grand jury disclosure issues is balancing potential injustice which might occur absent disclosure against any claimed need for secrecy.  The "substantial discretion" to order disclosure is guided by factors which include both the need to avoid injustice and a weighing of secrecy against the need for disclosure in the particular case at hand.  *Douglas Oil*, 441 U.S. at 222.

The government's attempt to distinguish *United States v. Evans & Assocs. Constr. Co.,* 839 F.2d 656 (10th Cir. 1988) is unpersuasive.  Although the Tenth Circuit acknowledged the importance of grand jury secrecy as a general proposition, it also noted that "there are instances where disclosure of grand jury testimony is warranted."  *Id.* at 658. Citing *Dennis v. United States,* 384 U.S. 855 (1966), the Circuit strongly approved the modern notion that "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice."  *Id.*

**2.    Defendant Does Have A Particularized Need in This Case**

Taken together or individually, a unique combination of circumstances satisfy the particularized need test here.  These facts relate to counsel's ability to provide effective assistance of counsel to his client, adequately prepare for trial, test witness credibility, and defend this case.

Mr. Zazi is charged with a serious crime allegedly related to international and domestic terrorism.  If convicted, he faces a significant prison sentence.  Yet given the current state of discovery, he knows little of the evidence against him.  He has not heard more than a snippet of relevant phone calls in a case where he allegedly lied to the FBI about the contents of those calls.  He still has not received a copy of the transcripts or translations of any of those calls.  He has no investigative reports supporting the materiality element of the case.[1]

So, this case is very different from the usual case where complete discovery is provided early.  Ordinarily, in our system of criminal justice, there would be a free flow of discovery.  In the usual case, counsel would be able to advise his client on such basic matters as who said what and when.  Normally, the grand jury transcript would be less revealing, a smaller portion of the case, and less critical to review.

In contrast to the usual case, the government is constrained in what discovery it has supplied to Mr. Zazi and the timing of all discovery.  It seeks for Mr. Zazi and counsel to proceed to plea decisions or trial without advance access to basic information about the facts of the case.  Given the posture of this unique case, counsel submits that absent disclosure of the grand jury testimony, injustice likely will occur.

---

[1] Counsel understands that the government may be working on declassification of some or all of these items.  This, however, does not alter the fact that Mr. Zazi and counsel are still very much in the dark when it comes to basic discovery.

Climbing the mountain of particularized need is nowhere like the Everest which the government here implies. Courts have ordered disclosure in less extreme circumstances. Indeed, far from being the disfavored policy which the government suggests has been "consistently" rejected, disclosure of grand jury materials to criminal defense counsel is amply supported by a long history of Supreme Court decisions. Almost seventy years ago, the Court acknowledged that "after the grand jury's functions are ended, disclosure is wholly proper *where the ends of justice require it.*" *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) (emphasis added).

Where, as here, there also may be "problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, and to test his credibility," these are "cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly."[2] *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). This is particularly true here given the Supreme Court's prescient caution that it "is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384 U.S. 855 (1966).

Naturally, Tenth Circuit law echoes the Supreme Court preference for disclosure. Two post-*Dennis* criminal cases affirming disclosure so that the defense could provide adequate trial representation to his client are exemplary. *See, e.g., Cargill v. United States,*

---

[2] The government wishes away the need for disclosure, arguing the defendant's assumption that an interviewing agent testified in the grand jury is wrong. Which agent testified changes nothing, however. Whether or not the grand jury witness was present at Defendant's FBI interrogation, any inconsistency between interviewing agents and grand jury testimony is still impeachment material.

381 F.2d 849 (10th Cir. 1967) (defense is entitled to the grand jury transcript for the purpose of impeaching a witness's testimony when the grand jury's functions are ended. Particularized need is shown when the defense states that it wishes to use the transcript for the purpose of impeaching a witness, to refresh his recollection, or to test his credibility); *Melton v. United States,* 398 F.2d 321 (10th Cir. 1968) (Defendant's request to disclose grand jury transcript "to establish an inconsistency" satisfies the particularized need test).

The need for disclosure is particularly acute here given the government's restricted view of discovery.    *See United States v. Jaskiewicz*, 272 F. Supp. 214 (E.D. Pa 1967) (although denying defendant's request for grand jury testimony where it was based solely upon a desire to preclude surprise at trial, the district court held that it was so doing because this was the only ground advanced and because a criminal defendant may "obtain information concerning the expected testimony of a witness by utilizing the methods of discovery authorized under the Criminal Rules").

It is far from a given that counsel could obtain information from witnesses relying upon his own investigative resources.  First, counsel does not even know who testified before the grand jury.  It is impossible to divine information from witnesses when the government conceals their identities.  Second, assuming an agent testified, given the unique nature of investigations that center around law enforcement testimony and practice, there is no assurance that such witnesses could be contacted even if counsel knew their identities. Finally, this really begs the question of impeachment because the defense still needs the testimony and prior statements to compare and test credibility.

Further, there is good reason to believe that the grand jury transcripts in this case contain *Brady/Giglio* material. Although the government claims that the agents who interviewed Mr. Zazi did not testify before the grand jury, the government's professed significance of this fact does not follow. Even though the interviewing agents did not testify, those who did could very easily contradict what is written in the interviewing agent's reports.

The government's claim that "any grand jury transcripts disclosed . . . will not **directly** contradict the interviewing agents' report" (emphasis added) is curious. Does this mean that the grand jury testimony of non-interviewing agents will indirectly contract the interviewing agents' report? Does the grand jury testimony contradict the reports in some other way? Given that the crux of this prosecution concerns the agents and their investigation, their characterization of Mr. Zazi's statements as untrue, and their testimony concerning the materiality of those statements, there is a compelling and particularized need for disclosure.

Nor must disclosure be delayed until trial. The Jencks Act does not control grand jury matters. Their disclosure is expressly governed by the Federal Rules of Criminal Procedure. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395 (1959).

**3.    Judicial Economy Warrants Disclosure**

Judicial economy also favors disclosure. Were the government permitted to not disclose, this Court would be faced with a trial plagued by repeated lengthy adjournments as defense counsel at the last minute sought, after direct examination of witnesses, to get up to speed on impeachment materials only provided at that juncture. Given the unique

discovery issues in this case, the nature of the materials to be reviewed, and the need to be thorough and zealous in review and advocacy, there is no telling how long the court and a jury would be delayed.

**4.      Secrecy Concerns Do Not Outweigh The Need For Disclosure**

The government justifies its position by elevating secrecy concerns above all else. This argument ignores salient facts and Supreme Court precedent. Not only has the Supreme Court squarely rejected the notion that secrecy trumps all, but there are a host of ways to mitigate those concerns. Of course, this District already has a standard protective order governing disclosure of grand jury transcripts. Also, there is a strong protective order in this case for other discovery. Finally, this Court has the ability to fashion such further orders as might be necessary to safeguard witnesses and other sensitive information. Indeed, counsel would agree to such further protective orders concerning any disclosed grand jury transcript, as this Court deems appropriate.

Moreover, the government's concern over secrecy is mitigated by the fact that it has previously disclosed a grand jury transcript from New York that is intimately related to the instant investigation. Ironically, the government has disclosed a grand jury transcript that led to charges being filed against Ahmad Wali Afzeli in the Eastern District of New York. This is the same individual whom the government claims Mr. Zazi spoke with concerning his son, Najibullah Zazi. Those conversations are the very conversations about which Mr. Zazi is accused of lying. Given that the government has already disclosed this aspect of a grand jury's investigation, its secrecy interest in Mr. Zazi's Grand Jury is considerably diminished.

9

**III.     Conclusion**

The government's desire for secrecy can be achieved without crippling the defense's ability to defend this case.  Justice and judicial economy warrant granting this motion.

WHEREFORE for the reasons stated above Defendant respectfully requests that this Court grant the Motion.

Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender

s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2009, I electronically filed the foregoing **REPLY TO GOVERNMENT'S RESPONSE [#35] RELATING TO DISCLOSURE OF GRAND JURY TRANSCRIPTS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Gaouette, United States Attorney
    david.gaouette@usdoj.gov

Tim Neff, Assistant United States Attorney
    tim.neff@usdoj.gov

Gregory Holloway, Assistant United States Attorney
    gregory.holloway@usdoj.gov

William M. Narus
    william.narus@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Mohammed W. Zazi  (via U.S. Mail)

s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant