IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.  09-cr-00438-DBE

UNITED STATES OF AMERICA,

       Plaintiff,

v.

MOHAMMED WALI ZAZI,

       Defendant.

_____

**REPLY TO GOVERNMENT'S RESPONSE [#34]
RELATING TO DEFENDANT'S MOTION FOR DISCOVERY**

_____

Defendant, by and through counsel, Assistant Federal Public Defender Edward R. Harris, replies to the government's response (Docket # 34), relating to Mr. Zazi's request for discovery, as follows:

**<u>Introduction</u>**

Discovery so far in this case, to put it charitably, has been limited.  Partly this is a function of the declassification process, but partly it is also the result of the government opposing even routine pretrial disclosure.  Instead of simply providing what it can provide soon rather than later, the government has chosen to stand on tenuous *Jencks* claims which further burden the discovery process and hamper Mr. Zazi's ability to defend this case.  The inevitable consequence of the government's position is that now we are litigating that which is customarily granted in this District without opposition.

Significantly, the government's response to Mr. Zazi's discovery motion includes repeated references to the *Jencks* Act.  However, the government's position that *Jencks* controls is contrary

to the longstanding policy of this U.S. Attorney's Office which historically has declined to stand on the formality of the *Jencks* Act.  Indeed, open-file discovery is the norm in this District.

Certainly, counsel has never seen the government simultaneously refuse to provide early and complete disclosure of all witness statements to counsel in any case and oppose release of Grand Jury transcripts.  Yet, that is exactly the case here.  And, that is the context in which this Motion must be decided.

**Argument**

**I.**    **This Court Has The Authority to Order Pre-Trial Disclosure of Witness Statements**

Not only does the government's reliance on the *Jencks* Act contravene longstanding custom in this District[1], that reliance is misplaced.  Although, neither Fed.R.Crim.P. 16 nor 18 U.S.C. 3500 (the *Jencks* Act) specifically provide for a defendant's right to discover statements of government witnesses in advance of trial, what is clear is that a "judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  Fed.R.Crim.P. 57(b).

The *Jencks* Act provides for disclosing such statements at trial.  It states that requests for such material by subpoena or through pretrial discovery are not appropriate.  *Jenkcs* does not, however, specifically forbid a Court from ordering earlier disclosure.  Rather, this Court possesses, in the exercise of its inherent power to promote the proper administration of criminal justice, the

---

[1] In the one other instance in his almost twenty years in Colorado that counsel encountered such resistance, counsel confirmed with a former United States Attorney that when that individual ran the U.S. Attorney's Office well over one decade ago, open file discovery was office policy and AUSA's in the office were not to stand on *Jencks* Act time lines.  That lawyer indicated that to his knowledge, this policy was longstanding and preceded his own tenure in that position.  Certainly, it is consistent with counsel's own experience in the vast majority of federal cases here.

authority to require the Government to disclose witness statements earlier than provided by the *Jencks* Act.

This authority is derived from the rules themselves which "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed.R.Crim.P. 2. Each of those factors is abundantly present here.

### A.    Written or Recorded Statements or Rough Notes

#### 1.    Notes of Interviews with Mr. Zazi

The government claims that notes taken during a witness interview are not discoverable under *Jencks*. Yet this argument in no way addresses whether notes taken during the interview of a defendant are discoverable under Rule 16(a)(1)(B)(ii).[2] In fact they are. *See United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004) (law enforcement's "rough notes" of defendant's interrogation should have been turned over to the defendant; "the government violated Rule 16 by failing to turn over Agent Poff's rough notes upon Defendant's request," although finding the error to be harmless). In other cases, the government has conceded as much, leading one appellate court to order: "On remand, the notes will be produced." *United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996) ("As the government conceded before us, production of these notes was required by [Rule] 16.").[3]

---

[2] Tellingly, all the cases that the government cites regarding the discovery of "rough notes" (Docket No. 34 at 5) all relate to *Jencks*, and do not discuss Rule 16.

[3] Interestingly, the Drug Enforcement Administration Agents Manual informs agents that "rough notes taken by an Agent" are discoverable and must be preserved. *See United States v. Watkins*, 33 F. App'x 411, 414 n.1 (10th Cir. 2002). How are FBI notes different?

Significantly, the Tenth Circuit has noted the importance of disclosing to defense counsel "agent's notes taken contemporaneously with an interrogation." *United States v. Lane*, 574 F.2d 1019, 1022 (10th Cir. 1978). *See also United States v. Grace*, 401 F.Supp.2d 1087, 1091 (D. Mont. 2005) ("Rule 16(a)(1)(B)(ii) requires the production of rough interview notes containing the substance of relevant oral statements by the defendants"); *United States v. Lewis*, 511 F.2d 798, 802 (D.C. Cir. 1975) ("We thus conclude that the language of Rule 16(a) . . . should not be read as precluding a trial judge from ordering the disclosure of the substance of a defendant's oral, unrecorded statements made to arresting officers."). *Cf. United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976) (holding that original notes taken by agents during interviews must be preserved). *But see United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) (Rule 16 is satisfied if government turns over written report but not notes, so long as that report contains "all that was in the original notes"); *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989).

Accordingly, Mr. Zazi requests at a minimum the production of all rough notes taken by agents during their interviews with him. First, these notes clearly are discoverable under Rule 16(a). Second, they are essential to the preparation of an adequate defense in this false statements case where the crux of the prosecution concerns the agents and their investigation, their characterization of Mr. Zazi's statements as untrue, and their testimony concerning the materiality of those statements. Obviously, the agents' notes, taken contemporaneously with their interview with Mr. Zazi, are essential components to this case. This point was not lost on the Tenth Circuit which explained in *Lane* that "[i]t is **obvious** that any deviation from the [agents'] notes appearing in the official report of the statement may furnish an aid to the accused." *Lane*, 574 F.2d at 1022 (emphasis added).

### 2. Other Agent Notes -- Where Statements Are Both *Brady* And *Jencks* Material, *Brady* Trumps *Jencks*

Non-Defendant witness interview notes likely also are discoverable under *Jencks* and *Brady*. *See United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993). Accordingly, Mr. Zazi requests that an order to preserve rough interview notes made by law enforcement during interviews of potential witnesses. *United States v. Lujan*, 530 F.Supp.2d 1224, 1265-67 (D. N.M. 2008); *Harris*, 543 F.2d at 1253. *See also Campbell v. United States*, 373 U.S. 487 (1963).

### 3. Where Statements Are Both *Brady* And *Jencks* Material, *Brady* Trumps *Jencks*

Due Process requires that the Government disclose any favorable evidence in its possession that is material to guilt or punishment. *Brady v. Maryland,* 373 U.S. 83 (1963). *Brady* concerns favor early disclosure in this case. The scope of *Brady* material is broad and imposes a substantial burden upon the prosecution to disclose exculpatory or mitigating information. That exculpatory evidence includes impeachment evidence. *United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Although witness statements are generally governed by the *Jencks* Act, inconsistent statements of a witness can be exculpatory, independent of their value for impeachment, and thus subject to production either as *Brady* or *Jencks* Act material. *Kyles v. Whitley,* 514 U.S. 419 (1994). *Brady* speaks in sufficiently broad terms to include impeachment evidence and statements favorable to defendant, whether or not disclosure of such items may otherwise be governed by *Giglio* or the *Jencks* Act, 18 U.S.C. § 3500. *See also Smith v. Secretary Dept. Of Corrections,* 50 F.3d 801, 825 (10th Cir.1995); *United States v. Glover,* 1998 WL 575125 (D. Kan. Sept. 1, 1989) (unpublished.).

Because "impeachment is integral to a defendant's constitutional right to cross-examination, there exists no pat distinction between impeachment and exculpatory evidence under *Brady.*" *United*

5

*States v. Buchanan,* 891 F. 2d 1436 (10th Cir. 1989). *See also Ballinger v. Kerby,* 891 F.3d 1371, 1376 (10th Cir. 1993). *Accord United States v. Hughes,* 33 F.3d 1248, 1252 (10th Cir. 1994). This is especially true "[w]here a witness' credibility is material to the question of guilt." *United States v. Fleming,* 19 F.3d 1325, 1330 (10th Cir. 1994). *See also Giglio,* 405 U.S. at 154-55. Such evidence is "evidence favorable to an accused," *Brady,* 373 U.S. at 87, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.

Specific reason exists in this case to believe that the witness statements here are *Giglio* or are otherwise *Brady* type impeachment material. First, various 302's provided to date in the limited extant discovery comment on Mr. Zazi's English language skills in a manner inconsistent with both common sense and counsel's investigation of this case. Admissions contained in notes and statements and consequently the substance of the statements are *Giglio* and *Brady* material. Second, although the government has not told counsel who testified in the Grand Jury, and has opposed grand jury disclosure, it appears likely that at least one witness was an FBI agent. That agent's statements are *Brady* material. Further, if a witness made contrary statements either to the Grand Jury or others, such statements too are *Brady* and must be disclosed.

Significantly, the Supreme Court "has never pinpointed the time at which the disclosure [under *Brady* ] must be made." *United States v. Anderson* 481 F.2d 685 (4th Cir.1973), *aff'd,* 417 U.S. 211(1974). However, it is settled that "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading and Paving, Inc.,* 760 F.2d 527, 531 (4th Cir.), *cert. denied sub nom., Dellinger. Inc. v. United States,* 474 U.S. 1005 (1985); *see also United States v. Pollack,* 534 F.2d 964, 973 (D.C. Cir. 1976) ("Disclosure by the government must allow the defense to use that favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion

6

requires pre-trial disclosure.")  Of course, "[d]isclosure to be effective must be made at a time when the disclosure would be of value to the accused."  *United States v. Shifflett,*  798 F. Supp. 354, 355 (W.D. Va.1992) (citing *United States v. Elmore,* 423 F.2d 775, 779 (4th Cir.), *cert. denied,* 400 U.S. 825(1970)).

The constitutional dictates of *Brady,* not the *Jencks* Act, govern the disclosure of evidence which is both *Brady* and *Jencks* material.  *See, e.g. United States v. Starusko,* 729 F.2d 256, 263 (3d Cir.1984) ("compliance with the statutory requirements of the *Jencks* Act does not necessarily satisfy the due process concerns of *Brady* "); *United States v. Tarantino,* 846 F.2d 1384, 1414-15 n.11 (D.C. Cir. 1988) (*Jencks* Act limitations on discovery do not lessen the Government's *Brady* obligations to disclose exculpatory material), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988);  *United States v. Owens,* 933 F. Supp. 76, 84 (D. Mass.1996) ("Given the important nature of the constitutional rights at stake ...the *Brady* requirement must effectively trump the *Jencks* Act where the two are in direct conflict.");  *United States v. Thevis,* 84 F.R.D. 47, 54 (N.D. Ga. 1979) ("In the face of this conflict [between *Brady* and the *Jencks* Act], this Court believes that the better rule requires the pretrial disclosure of *Brady* material in accordance with the timetable set forth in this order even though that material is part of a *Jencks* Act statement.").  This approach is grounded in the concept of Constitutional primacy.

Eventual disclosure at a trial is akin to no disclosure at all.  Such pseudo-disclosure vitiates the defense function in this case and implicates Fifth Amendment, Sixth Amendment, and Due Process concerns.  To insure the effectiveness of disclosure, it must be provided early enough that counsel can effectively follow-up on any investigation engendered by the evidence.  Disclosure should be early enough that counsel is not forced mid-trial to scramble to review, absorb, and

integrate the evidence into his defense.  A well-crafted cross-examination based upon that evidence is far more effective than one cobbled together at a court recess.

Neither *Brady, Giglio,* nor *Bagley* remotely suggest that the constitutional rights they articulated are subject to time limitations imposed by Congress.  Nor, of course, is that constitutionally permissible.  Rather, *Brady* and its progeny require the government and, if necessary, the federal courts, to assure that exculpatory and impeachment material is disclosed to defendants in time for it to be effectively used.

Here the need for early disclosure is particularly acute given the shroud of national security secrecy around this case.  *See United States v. Jaskiewicz*, 272 F. Supp 214 (E.D. Pa. 1967) (although denying defendant's request for grand jury testimony where it was based solely upon a desire to preclude surprise at trial, the district court held that it was so doing because this was the only ground advanced and because a criminal defendant may "obtain information concerning the expected testimony of a witness by utilizing the methods of discovery authorized under the Criminal Rules").

## II.    Judicial Economy Warrants Early Disclosure

Judicial economy also favors early disclosure.  Were the government permitted to not disclose, this Court would be faced with a trial plagued by repeated lengthy adjournments as defense counsel at the last minute sought, after direct examination of witnesses, to get up to speed on impeachment materials only provided at that juncture.  Given the vagaries of investigation already discussed, the nature of the materials to be reviewed, and the need to be thorough and zealous in review and advocacy, there is no telling how long the court and a jury would be delayed.

**III.     Secrecy Concerns Do Not Outweigh The Need For Disclosure**

Should the government seek to justify  strict adherence to *Jencks*  on national security or secrecy grounds, this Court should rule that secrecy does not trump due process, fair trial, effective assistance of counsel, or *Brady.*   Further, any secrecy argument must come to grips with:

- the protective order already entered in this case;

- the ability of this Court to fashion such further orders as might be necessary to safeguard confidential information; and

- counsel's offer for further protective orders to be considered.

Ultimately, there is no secrecy interest outweighing the real concern that absent disclosure the defense will be crippled in its ability to defend this case.

**IV.     Defendant's request for a list of witnesses the government intends to call during its case-in-chief**

Mr. Zazi acknowledges that, at this stage of the proceedings, he is not entitled to a list of witnesses the government intends to call during its case-in-chief.  However, this does not mean, as the government has urged, that he is never entitled to such a list.  Accordingly, he asks this Court to set a reasonable deadline in advance of trial, by which such a list must be disclosed.


Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender


s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant

9

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2009, I electronically filed the foregoing **REPLY TO GOVERNMENT'S RESPONSE [#34] RELATING TO DEFENDANT'S MOTION FOR DISCOVERY** with  the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Gaouette, United States Attorney
        david.gaouette@usdoj.gov

Tim Neff, Assistant United States Attorney
        tim.neff@usdoj.gov

Gregory Holloway, Assistant United States Attorney
        gregory.holloway@usdoj.gov

William M. Narus
        william.narus@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Mohammed W. Zazi  (via U.S. Mail)

s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant